With the attorneys who are going to make a presentation, please step forward. Identify yourselves and the party you represent. Sean Collins-Stapleton on behalf of Roberto Almodovar. My name is Bill Toffanetti. I'm an assistant state's attorney for Cook County for the people. All right, you're going to be reserving time. Before we get started, I think I do have to make a statement for the record with regard to this matter. This is Justice Palmer speaking. It may not come to your attention, but it came to my attention when I was reading the briefs in this case that one of the alleged instances of misconduct by Detective Guevara, which was alleged by the defendant in his brief, had to do with a case, People v. Thomas Sierra. And it's alleged in the briefs that Detective Guevara coerced a witness into making an identification. Jose Rodriguez, I think it is, but I'm sorry if I'm misspeaking. I remember this Thomas Sierra case, and it's a case that was tried before me when I sat as a trial judge in 26th California. And I took a look at my notes yesterday, and in addition to presiding over that case, I also presided over a pretrial hearing in which the ‑‑ I want to actually get the witness' name right. Give me one second, please. Oh, I'm sorry. Jose Melendez in the Thomas Sierra matter. And I noticed in my notes with regard to that trial, I held a pretrial hearing because Mr. Melendez at that point refused to testify and was taking the Fifth Amendment, and a hearing was held to determine whether Mr. Melendez's prior written statement would be admitted under Section 115-10.2. A hearing was held, and Detective Guevara testified before me, and ultimately I made a ruling with regard to that matter, and that statement was admitted. As a result of that, I believe I should recuse myself with regard to this matter. I'll listen to anything anybody wants to say, but that's my initial indication. I would agree with you, Your Honor. All right. Then I'm glad to do it. And so I'm going to recuse myself and step out for this hearing. We have you gentlemen here. Unless there's any strong objection, we'll proceed, and the third panel member will be appointed later who will listen to the oral arguments and review the other materials. All right. You may proceed. Your Honor, may I please the Court? I'm here to ask this Court to vacate the deniably defiled Moldavar's successive post-conviction petition and remand the petition for second stage post-conviction proceedings. That's important. Note that the State's case against my client was built entirely around the identifications of two witnesses procured by Detective Guevara. How do you get around Rex Giudicata on the second post-conviction? Well, the same way that this Court dealt Rex Giudicata in People v. Reyes, Your Honor. In that case, Reyes Court found that the pattern of Moldavar's misconduct, the evidence of that, the same evidence that is before this Court, constitutes substantial new evidence that breathed life into the underlying claim. And this Court identified the same thing. It supports, in this case, Canelli Saez's account that Guevara directed him to identify my client. And so under People v. Reyes, the Bar-Rex Giudicata should be relaxed in this case. Again, Saez and another witness, Jackie Grandy, said that my client was the gunman in a drive-by shooting. In the initial post-conviction proceedings, Saez testified that Guevara directed him to identify my client, that he in fact had not seen the shooter. He further stated that Guevara showed him photographs of my client and the co-defendant and directed my client to view these men in a lineup. He also told my client not to mention that he had shown him these photographs. Grandy and Guevara testified at that hearing, and the Court believed their testimonies and rejected his claim. Years later, Guevara's pattern of practice of misconduct came to light, first in this Court's decision in Reyes, and then in the federal jury verdict against Guevara in the Law & Johnson case. It was at that time that my client filed a successive post-conviction petition claiming that the pattern of practice of Guevara's misconduct supported three claims. A Brady violation, a violation of due process through the use of suggestive identification procedures, and an actual innocence claim. And he supported each of these claims with the pattern evidence of Guevara's misconduct. The Circuit Court denied Lee to file this petition because the Court found that the pattern evidence was completely collateral and made no difference in the case. Of course, that decision reflects directly to this Court's decision in Reyes, where this Court found that the pattern evidence directly corroborated the petitioner's claims of a Brady violation. And so in order, of course this is a successive petition, and so my client is required to show cause and prejudice for the Brady claim and the due process claim. And the State has not contested that he showed cause for these two claims. Indeed, the basis for these claims, the pattern of Guevara's conduct, arose after his trial and initial petition. So he has clearly established cause for not raising these claims sooner. And as for prejudice, as for the Brady claim, this Court in Reyes already found that suppressing this pattern evidence was a Brady violation. So I think it's clear that he has established prejudice on the Brady count. As for the due process claim, again, the pattern evidence corroborates Saez's account that Guevara directed him to file this petition. And that is a violation of due process. And therefore, there's prejudice on that count as well. And finally, as for the actual innocence claim, this material is newly discovered, clearly, since the time of the trial and the initial post-conviction proceedings. It is material and not cumulative, because the jury never was told that Guevara was guilty. It was a corrupt and ruthless detective who repeatedly manipulated identification procedures to frame innocent people. And finally, if the jury had heard this evidence, it would likely change the results on retrial. Because the jury would be repelled, frankly, by the State's case against my client. And I think that's the case that's being built with Guevara. Excuse me. The investigation conducted by Guevara. And I think would consider my client's alibi defense in a new light. So the Court has no further questions? All right. Go ahead. Good morning, Your Honor. Once again, my name is Bill Toffinetti. I'm an Assistant State's Attorney. In order to be a valid claim of actual innocence, it has to do more than merely cast doubt on a previous conviction. The evidence has to be totally, it has to be exonerating. It has to give more than the possibility of acquittal. It has to make an acquittal probable. In this case, we do not have any new evidence that relates to this claim, to this case. What we have is evidence that arose from other cases, most of which occurred after this case was tried, after the defendant was convicted, after he had his appeal, and even after he had his post-conviction hearing. But in this case, you only had the eyewitness testimony. You didn't have any other evidence. And that eyewitness testimony is suspect. That eyewitness testimony, we have two witnesses, one of which was never called into question. The other one was the subject of not one, but two recantations. And Kennelly Saez had the opportunity to tell his story, to tell his recantation to Melinda Powers, to Jack Callahan, the Assistant State's Attorney, to the judge, to the jury, to say that Detective Guevara showed me these photographs and thereby tainted the lineup. But in point of fact, he didn't say these things. He wouldn't say anything that anyone told him to. I'm sorry? When the witness came to recant his first eyewitness, he said his gang leader told him to change the story. That has been litigated. That has been found to be lacking in credibility. And in fact, the defendant at trial stated that no one attempted to tell him who to identify. It's in this Court's Rule 23 order. And as a result, you have something that's in the trial record that directly rebutts his claim on post-conviction, both the original post-conviction and the new post-conviction motion. And the Delaunay case states that because when the affirmant is directly rebutted by the trial record, it is no longer required that we take it as true. And so when the judge, who had sent this case all the way to a third stage hearing, called all the witnesses, heard all the testimony, he's presented with yet another attempt to impeach the verdict by so-called newly discovered evidence, which has nothing to do directly with this case and is not newly discovered and is certainly not Brady material, it's within his power to dismiss, to say, no, we've done enough. You've told your story. I didn't believe it. You told another story. I didn't believe it. And there is no evidence of actual innocence. There is no Brady material. And as a result, this case has gone far enough. Don't you believe the jury should at least have heard about the detective's activities in the past? I'm sorry, Your Honor? Don't you believe that the jury should at least have heard the evidence of the actions of the detective? Wouldn't that add to his credibility or lack of credibility? Only if, first of all, most of it, at the time of the trial, at the time that the jury heard this case, most of those things that he's accused of hadn't occurred, so he couldn't have heard it. The Reyes case hadn't occurred. You know, a large number of these things. Defendant didn't send one subpoena, Deuce has taken, to ask for the records of the police officer. He could have sent out a subpoena. He could have gotten whatever records, or the detective could get whatever records were available, if the state would either have complied or fought it, and it would have been litigated, and it would have gone to an appellate court eventually. But the defendant only has a right to call in other instances of misconduct on the part of the investigating officer when it's part of a pattern. Most of the instances that defendant describes are actual or physical violence against defendants in order to get a confession. And that's a large part of the Reyes and Szilagyi cases, that they were physically abused in order to get them to confess. Those are, you know, that would be propensity, okay, and those are not admissible. So a large number of what he claims would not be admissible. Further, a large, several of the instances that he lists in his brief were unfounded. You know, there's not every allegation is evidence, you know, it has to be found as true. I'm sorry, in this case, the whole question of innocence dealt with the defendant saying, I was someplace else, I went to work, I went home, he had evidence that he went home. Your Honor, I'm having a very hard time hearing. The defendant said he went to work. Then after work he went home, and he was at home at the time that this incident occurred. The trial judge heard that testimony, but he also heard the testimony of the officer and chose to disbelieve the officer based on what he had at that time. Now we have different testimony. Not only testimony which shows that the officer has been found by some courts to be a liar. He lied in some cases about whether or not he coerced confessions. But he also lied, there's also evidence that he also persuaded other witnesses to falsely testify against others. This is a pattern here to convict defendants who may or may not be guilty of the offenses they're charged with. In this case, we have not just the officer, okay, we have the witness, Sayers Kennelly. And he has told two recantations. I mean, they don't agree. If he was telling the truth, we'd get one story and not two stories. But now, you know, we get two different versions, one of which pins the blame on the police officer, the other one doesn't. The issue is presented to the jury. The jury found the defendant guilty. The defendant attempted to impeach that in post-conviction proceeding by bringing Sayers Kennelly forward to tell his story and to bring the other witnesses forward to tell their story. The judge did not believe the defendant's witnesses. He believed the people's witnesses, and he kept the conviction. There is nothing in this so-called newly discovered evidence that goes to, that demonstrates to any extent exculpation of the defendant. There is nothing that says he could not have been the shooter. Well, what about the testimony of his alibi witnesses who said he was at home at the time? That's come and gone. That's the trial. But now we have new evidence that says that the trial judge weighed the evidence on both sides, and he weighted in favor of the officer, but now we have evidence that the officer is a liar. Isn't that? We have evidence that the officer may have behaved improperly on certain cases. We don't have convincing evidence. We don't have evidence that is uncontradicted by the record that he did so in this case. All right? So what is the burden on the first stage? Aren't you putting too much on the first stage? Well, the burden on the first stage is just of a meritorious claim. But we are in a successive petition situation. Well, he's saying actually innocent. Actual evidence, and a claim of actual evidence must be freestanding. It cannot be paired with any other type of claim. It cannot be paired with a Brady claim, for example. So by definition, defendant cannot state a claim of actual innocence. It's not freestanding. The Brady material is not material that was uniquely in the hands of the State. You know, we do not owe defendant a burden of keeping him apprised of what's going on in the courtroom. You know, the Reyes case is a matter of public record. It's not our job to let him know what is going on in the courts. He's had his post-conviction claim litigated 20 years ago. Well, that was long before Reyes came up. That was long before the Reyes case came up, right? And they stayed in Reyes. He's not bound to interview every defendant who's been charged in this district. When the Reyes case comes down, what are we supposed to do? What's our obligation? I mean, are we supposed to track the cases the defendant might be interested in? This is not Brady material. He makes two claims, which are mutually exclusive. Actual innocence and Brady. There's no evidence that demonstrates defendant did not commit this crime. Merely impeaching the verdict is not evidence of actual innocence. The alibi witnesses that testified at trial, that is not newly discovered evidence of actual innocence. That is come and gone. There is nothing in his motion that says that the defendant could not have committed this crime. That he is, in fact, an innocent man. All he wants is another bite of an apple he's already had two bites of. And as to Brady material, none of this is uniquely in the possession of the state. None of it goes to defendant's guilt or innocence. It's not material to his conviction. Maybe material to the people involved in those cases, clearly. But not to our case. The mere fact that the detective was found to have acted improperly on another case doesn't mean ipso facto that he acted improperly on this case. But this is the question. This is the question I think we have here. We have a case where defendant presents testimony. I was at work. I think there was alibi testimony. He was at home. But the trial finder of fact listened to the testimony. The judge said, well, I'm going to believe the officer in this case. But when he made that decision, he did not have before him these cases where this officer has been found guilty of lying. Or has been determined to be a liar. So doesn't that change the evidence? Doesn't that change things under Reyes? I think before it would change it, the defendant would have to come up with some evidence that the officer was acting improperly on this case. But what about the pattern that he has? He has a pattern here. A pattern not only being a liar, but there's also evidence that he framed other individuals. The pattern is not evidence on this case. It doesn't prove anything on this case. It proves that he acted improperly on other cases. It could have been part of a larger constellation of evidence, but there is no other evidence. What you have is a fairly convicted defendant who wants to get out of prison. Jackie Grande and Sayers Kennelly both testified that the car stopped directly in front of them. Kennelly says that he got to within five feet of the defendant, so he was able to see them. So his courtroom testimony is certainly enough to convict. And it is contradicted by his own recantation, which the court does not have to accept as true. Recantations are frowned upon. That is a heavy, heavy burden. So defendants simply either legally or factually, he has not met his burden on this case to show that he has the right to file a successive petition. All right. Thank you very much. Thank you very much, Your Honor. This case is a Reyes case, except it's a successive petition. Reyes found that this pattern of evidence supported the petitioner's claims, and it's the same case here. The jury never knew that Guevara acted in a pattern of practice of his conduct. They never heard that Kennelly Sayers said that Guevara directed him to identify my client. And therefore, this court should reverse and remand further proceedings. All right. Thank you. This case will be taken under advisement. We'll argue we'll brief. We'll take a short recess.